# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| THERESA R., | ) |
|        Plaintiff, | ) ) ) |
| v. | ) Docket No. 1:18-cv-337-NT ) |
| ANDREW M. SAUL, Commissioner of Social Security, | ) ) ) |
|        Defendant. | ) ) |

## ORDER ON SOCIAL SECURITY APPEAL

This Social Security Disability ("**SSD**") appeal raises the question of whether the administrative law judge ("**ALJ**") supportably found the Claimant capable of performing work existing in significant numbers in the national economy. The Claimant seeks remand on the bases that the ALJ's physical residual functional capacity ("**RFC**") determination was not supported by substantial evidence and that the ALJ did not properly assess the Claimant's subjective statements. *See* Itemized Statement of Specific Errors ("**Statement of Errors**") 4-17 (ECF No. 11). I reject the Claimant's challenges to the ALJ's determination, find no reversible error on her part, and, accordingly, affirm the Commissioner's decision.

## ADMINISTRATIVE FINDINGS

Pursuant to the Commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982), the ALJ found, in relevant part, that: (1) the Claimant met the insured status requirements of the Social Security Act through December 31, 2020; (2) she had not

engaged in substantial gainful activity since the alleged onset date of March 30, 2015; (3) she had the severe impairments of total left hip replacement, bilateral adhesive capsulitis of the shoulders, cervical spondylosis, cervical radiculopathy, lumbar spondylosis, congenital spinal stenosis, obesity, and depression; (4) her impairments did not equal the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1; and (5) she had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she needed to be permitted to stretch and change position at her discretion, such as the freedom of a sit/stand option, throughout the day. Findings 1–5, R. 17–27.[1] Additionally, the ALJ found that the Claimant could only reach overhead occasionally, and that, considering her age (44 years old on her alleged disability onset date), education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 5–10, R. 20–27. The ALJ concluded, therefore, that the Claimant had not been disabled from March 30, 2015, her alleged onset date of disability, through the date of the decision, December 6, 2017. Finding 10–11, R. 28–29. The Appeals Council declined to review the decision, making the decision the final determination of the commissioner. R. 1–3; 20 C.F.R. § 404.981.

## STANDARD OF REVIEW

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-*

---

[1] Citations to "R. __" refer to the page numbers of the consecutively-paginated administrative record, available at ECF Nos. 9–1 to 9–8.

*Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

If, as here, the ALJ reaches the Step 5 question of whether the claimant can perform work available in the national economy, the burden of proof shifts to the commissioner to show that the claimant can perform work other than her past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the claimant's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## DISCUSSION

### I. Challenge to Physical RFC Determination

The ALJ found that the Claimant retained the RFC to perform light work with the following additional physical limitations:

> [T]he claimant must be permitted to stretch or change position at her discretion, such as the freedom of a sit/stand option, throughout the day. Additionally, the claimant can only reach overhead occasionally and should not be exposed in the workplace to extremes of hot or cold or humidity.

3

Finding 5, R. 20. The Claimant challenges that assessment on the basis that the ALJ erred in weighing the opinion evidence of her longtime primary care provider, Advanced Practice Registered Nurse ("**APRN**") Abigail Olden. I find no error.

In December 2016, APRN Olden opined that the Claimant could lift and carry less than ten pounds frequently or occasionally; sit for less than six hours total in an eight-hour workday; and stand/walk for less than two hours total in an eight-hour workday. R. 618, 620. She opined that the Claimant was limited in reaching overhead; could reach overhead, handle, finger, and feel less than two and a half hours per day; and would be unable to perform all postural functions except for occasional climbing of ramps, stairs, ladders, ropes, or scaffolds. R. 619–20. She concluded that, "[d]ue to chronic pain [and] depression I do not feel [the Claimant] could work [at] this time." R. 621.

The ALJ concluded that, "[w]hile the record supports just enough clinical and objective evidence to corroborate the reaching limitations, the rest of Nurse Olden's opinion stands in stark contrast to the longitudinal and substantive medical evidence." R. 25. The Claimant contends that, although the ALJ stated that she was assigning partial weight to APRN Olden's opinion, she rejected the portion that she purported to adopt, and she failed to provide any valid reason for rejecting the remainder of the opinion. Statement of Errors 5–6.

### A. Standard

It is the ALJ's responsibility to weigh medical evidence and opinions, and resolve any conflicts that exist. *Barrientos v. Sec'y of Health & Human Servs.*, 820 F.2d 1, 2 (1st Cir. 1987) (citing *Lizotte v. Sec'y of Health & Human Servs.*, 654 F.2d

4

127 (1st Cir. 1981)). The parties agree that APRN Olden did not qualify as an "acceptable medical source" pursuant to the regulations in effect at the time of the ALJ's decision, and, thus, the ALJ "was not required to supply 'good reasons' for the weight given to her opinion." *John M. v. Berryhill*, No. 17-452, 2018 WL 6272888, at *3 (D. Me. Nov. 30, 2018) (citing *King v. Astrue*, No. 09-337, 2010 WL 4457447, at *4 (D. Me. Oct. 31, 2010), *rep. & rec. adopted*, 2010 WL 4823921 (D. Me. Nov. 22, 2010) (ALJ not expressly required to supply "good reasons" for discounting the opinion of a source who is not an acceptable medical source)). "Instead, the ALJ was obliged only to explain the weight given to her opinion or otherwise ensure that the discussion of the evidence allows a claimant or subsequent reviewer to follow her reasoning." *Id.* (citation and internal quotations and alterations omitted).[2]

The ALJ met that standard here.

### B. Reaching Limitation

As noted above, the ALJ explained that she had given APRN Olden's opinion weight only insofar as "the record supports just enough clinical and objective evidence to corroborate the reaching limitations." R. 25. Nonetheless, the Claimant complains, the ALJ inexplicably failed to adopt APRN Olden's opinion that she could reach *in all directions* for less than 2.5 hours per day, requiring remand. Statement of Errors 5. I disagree.

---

[2] With respect to claims filed on or after March 27, 2017, the Commissioner has recognized several additional categories of practitioners, including "Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title," as "acceptable medical sources." 20 C.F.R. § 404.1502(a)(7).

5

APRN Olden completed a Social Security Administration ("**SSA**") form titled "Medical Source Statement of Ability to do Work-Related Activities (Physical)" ("**Medical Source Statement**") that contained, *inter alia*, a section on "Manipulative Limitations." R. 618-21; attached hereto as Appendix A. Within the Manipulative Limitations section of the form, APRN Olden checked a box indicating that "[r]eaching all directions (including overhead)" was a manipulative function that was "limited" by the Claimant's impairment. R. 619. In response to the form's direction to indicate "how often" the claimant could reach, Nurse Olden checked the "less than 2½ hours a day" box as opposed to either the "occasionally" or "frequently" boxes. R. 619. The form then states:

> Describe how the activities checked "limited" are impaired and the basis of additional manipulative limitations. What medical/clinical findings support your conclusions?

In response, APRN Olden wrote: "Cannot lift arms above 90º due to pain and weakness[.]" R. 619.

The ALJ reasonably construed APRN Olden's opinion regarding reaching as an opinion that the Claimant could only reach overhead occasionally. Finding 5, R. 20, 25. The Claimant seems to assert that because APRN checked the "limited" box for the category labeled "[r]eaching all directions (including overhead)," that APRN Olden was necessarily opining that the Claimant could not reach in all directions. That is not the only, nor is it the most logical, interpretation of the form. Simply because the "reaching all directions (including overhead)" box is checked, it does not necessarily mean that the individual is in fact limited in reaching in *all* directions. Particularly where, as here, APRN Olden qualified her checkbox indication that the

6

Claimant was limited in her reaching by explaning, that the Claimant could not "lift her arms above 90º," the more logical interpretation of the Medical Source Statement is that the Claimant's reaching limitations involved only overhead reaching. Indeed, that interpretation would be consistent with other record evidence, including the Claimant's self-report that she could do several activities that require reaching, such as making the bed, washing dishes, preparing meals, and shopping. R. 200–01.

The Claimant also faults the ALJ for concluding that she can only reach overhead "occasionally" even though APRN Olden did not check the "occasionally" box but rather indicated that the Claimant was limited to reaching overhead for "less than 2½ hours a day." The SSA defines the word "occasionally" as "occurring from very little up to one-third of the time." Social Security Ruling 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). Accordingly, APRN Olden's reaching limitation to less than 2½ hours per day falls within the definition given by the SSA to the word "occasionally."[3] I find no basis to disturb the ALJ's conclusion that the Claimant could only reach

---

[3] The definition of occasionally goes on to state: "Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles." Social Security Ruling 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983).

Both "occasionally" and "less than 2½ hours a day" are inexact. The SSA's definition of "occasionally" is both broader and narrower than the Medical Source Statement form's 2½ hour ceiling—broader as one-third of a workday would be about 2.6 hours and narrower because 2 hours is less than 2½ hours. The form's use of "less than 2½ hours a day" is likewise imprecise because it does not actually provide an applicable maximum time. Nevertheless, given the qualifier "approximately" contained in the SSA's definition of occasionally, the two categories are largely overlapping.

7

overhead occasionally and consider it consistent with APRN's Medical Source Statement.[4]

## C. Remaining Limitations

The Claimant next contends that the ALJ erred by rejecting the remainder of the Olden opinion. She specifically asserts that: (1) the ALJ placed too much emphasis on APRN Olden's status as a non-acceptable medical source and not enough on her status as a longtime primary care provider, (2) it was improper for the ALJ to suggest that APRN Olden's opinion was an advocacy opinion, and (3) a more recent neurological examination by Dr. Rolfe Reitz did not discount the Claimant's experience of pain. Statement of Errors 6–10.

First, the Claimant concedes APRN Olden was not an acceptable medical source under the regulations in effect as of the date of the ALJ's decision. Statement of Errors 6. Accordingly, it was within the ALJ's discretion to treat APRN Olden as a non-acceptable medical source and accord her opinion less weight. *See, e.g., Applebee v. Berryhill*, No. 1:17-cv-00003-NT, 2017 WL 6523138, at *13 (D. Me. Dec. 20, 2017) (rec. dec., *aff'd* Mar. 29, 2018), *aff'd*, 744 F. App'x 6 (1st Cir. 2018). The ALJ's reasons for discounting APRN Olden's opinion were adequately explained.

Second, the ALJ did not characterize the Olden opinion as an "advocacy opinion"; rather, she observed that, "without imparting a motive for the new diagnoses on the same date the claimant sought an opinion regarding disability, the

---

[4] Because I conclude that the record supports the ALJ's conclusion that the Claimant was limited to occasional *overhead* reaching, I do not address her claim that she did not have the capacity to perform the jobs identified by the vocational expert. Statement of Errors 12–13.

8

record shows the opinion from nurse Olden is the only opinion of record concerning these severe physical symptoms and limitations." R. 25.

Third, and finally, even assuming *arguendo* that the ALJ suggested that the Olden opinion was an advocacy opinion, she validly discounted it on the basis that it stood in "stark contrast to the longitudinal and substantive medical evidence," including evidence from Dr. Reitz. R. 25; *Campagna v. Berryhill*, No. 2:16-cv-00521-JDL, 2017 WL 5037463, at *4 (D. Me. Nov. 3, 2017) (rec. dec., *aff'd* Jan. 2, 2018) ("lack of support and inconsistency with other substantial evidence of record are well-recognized bases for affording [even] a treating source's medical opinion little or no weight"); *Malaney v. Berryhill*, No. 2:16-cv-00404-GZS, 2017 WL 2537226, at *5 (D. Me. June 11, 2017) (rec. dec. *aff'd* July 11, 2017), *aff'd*, No. 17-1889 (1st Cir. Sept. 5, 2017) (any error in ALJ's rejection of an opinion on the basis it was an "advocacy opinion" did not warrant remand when ALJ provided other supportable reasons for rejecting the opinion) (citation and internal quotation marks omitted). That finding, in turn, is supported by substantial evidence.

The treatment records reveal that after an unsuccessful left hip surgery in May 2015, the Claimant underwent a total left hip replacement in February 2016. The Claimant recovered from the full left hip replacement surgery in less than one year, and she displayed normal gait and normal neurological and physical examination results starting from two months after the February 2016 surgery through 2017. The ALJ explained that "the evidence of short walks between surgeries, the success of the total hip replacement within a year from the first hip injury and the evidence of

9

normal gait and station since April 2016, precludes limitations greater than a reduced range of light [work] with a relatively liberal sit/stand option (to be exercised at the claimant's discretion), as reflected in the [RFC]." R. 22.

In addition, the ALJ noted that treating orthopedist Glenn Leiberman, M.D., found, in November 2015, that Claimant had problems with abducting the right shoulder over ninety degrees, but otherwise had near full range of motion in the neck. R. 22, 553. The ALJ also discussed that in April 2016, two weeks after noting that the Claimant had decreased strength "particularly overhead" with her shoulder and recommending shoulder injections, the Claimant's orthopedist Alexander Henning, M.D., stated that he "discuss[ed] holding off any injections for her should[er] as she seems to be improving with therapy and time." R. 23, 559.

Moreover, as the ALJ discussed, in June 2016, after observing neck and back MRI results documenting some cervical disc herniation with no spinal cord compression, and "spinal stenosis made worse by 'normal' spondylosis," Dr. Anthony Salerni recommended epidural steroid injections to the Claimant's lumbar and cervical spine. R. 561, 23. However, as the ALJ noted, there is no evidence of any such injections having been undertaken, and the record revealed no evidence of further visits to Dr. Salerni or any other orthopedic specialist since that June 2016 visit. R. 23.

The ALJ noted that the only evidence of widespread joint pain and significantly decreased power in the upper and lower extremities was limited to the one examination conducted by APRN Olden, which was undertaken in connection the

Claimant's request for an opinion regarding disability. R. 25, 625. On the same day that APRN Olden provided her opinion, she found that the Claimant's upper and lower extremity strength was "2/5," that the Claimant had generalized pain and decreased range of motion throughout all her joints, and that the Claimant was "unable to work due to pain severity." R. 625. However, as the ALJ properly discussed the medical treatment records at visits both before and after APRN Olden's December 2016 note are not consistent with these extreme findings. For example: (1) in June 2016, Dr. Barrett Chaplin found the Claimant had a normal sensory examination, noted that she was "now able to walk after her hip surgery," and recommended the Claimant "get frequent regular exercise," R. 592-93; (2) that same month, an orthopedic consultative examiner noted that Claimant's "[s]trength in the upper and lower extremities [wa]s full power," R. 628; (3) in April and May 2017, Dr. Reitz found that the Claimant's musculoskeletal examination revealed that her "[motor] strength functions [we]re intact [and] [t]he muscular tone [wa]s normal," the Claimant's sensation was "[i]ntact to sharpness, touch, vibratory and temperature," and she had a "[n]ormal station and ambulatory pattern," R. 633, 638; and (4) in August 2017, the Claimant had a normal physical and neurological examination, with full muscle strength ("5/5"), and a "normal, steady" gait, R. 688. R. 23.

The ALJ discussed that the record evidence of left finger numbness was limited to one examination from Dr. Salerni in June 2016, with no subsequent follow-up examination. R. 628-29. Finally, the ALJ considered that APRN Olden was not an

11

acceptable medical source, and properly noted that her opinion was not sufficient, standing alone, for the drastic limitations assessed.

In sum, the ALJ supportably explained that the RFC limitations were supported by an evaluation of the entire record, which revealed "the waxing and waning of clinical and medically observable findings, the conservative treatment where recommended, the absence of treatment pursued by the claimant, and the almost complete absence of treatment for the back, neck and shoulders since the summer of 2016." R. 24.

Remand, accordingly, is unwarranted on the basis of this point of error.

## II. Assessment of the Claimant's Subjective Symptoms

The Claimant next contends that the ALJ erred in assessing her subjective statements concerning the intensity, persistence, and limiting effects of her symptoms. Specifically, she asserts that the ALJ failed to provide specific reasons, supported by the evidence, for finding that her statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence.

### A. Standard

In 2016, the SSA promulgated Social Security Ruling 16-3p ("**SSR 16-3p**") entitled "Evaluation of Symptoms in Disability Claims," and which "provide[d] guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims under Titles II and XVI of the Social Security Act." 81 Fed. Reg. at 14166. Under the heading "Purpose," the SSA explained:

> [W]e are eliminating the use of the term "credibility" from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character.

*Id*. at 14167. SSR 16-3p applies to the commissioner's decision in this case.

SSR 16-3p also outlines a two-step evaluation process in which a decisionmaker first determines whether a claimant has a medically determinable impairment that could reasonably be expected to produce her alleged symptoms. Then, if a claimant has such an impairment, the decisionmaker must evaluate the intensity and persistence of those symptoms and determine the extent to which they limit the claimant's ability to perform work-related activities. *Id*. at 14167–68. In making that evaluation, a decisionmaker should

> examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

*Id*. at 14168. While the Ruling clarifies the extent to which an ALJ can rely on a credibility determination (i.e., adjudicators "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation"), the Ruling does not dictate that any particular evidence, including evidence of a claimant's motivation, is immaterial. *Id*. at 14171.

The Ruling recognizes that a claimant or others might make statements that are consistent or inconsistent with the claimant's subjective report of symptoms. The Ruling thus provides:

> [i]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities for an adult. . . . In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities.

*Id.* at 14170. Moreover, the Ruling specifies that the ALJ "will consider the consistency of the individual's own statements." *Id.* While consistency generally favors the claimant, inconsistency may mean, but "does not necessarily mean," that the claimant's report of symptoms is "inaccurate." *Id.* "[T]he deferential standard of review . . . continues to apply following the adoption of SSR 16-3p, but for the use of the term 'credibility.'" *Christopher D. v. Berryhill*, No. 1:17-cv-377-JHR, 2018 WL 4087477 (D. Me. Aug. 24, 2018).

In considering the Claimant's arguments, the Court must be mindful that "issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Commissioner, and the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [her], not for the doctors or for the courts." *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018) (internal quotation marks omitted). The claimant's "residual functional capacity is, after all, an administrative finding reserved to the Commissioner." *Id.* at 14 (citing 20 C.F.R. §§ 416.927(d)(2), 416.946).

14

## B. Subjective Statements of Symptoms

In this case, the ALJ's assessment of the record, including her consideration of the Claimant's report of symptoms, was in accord with the applicable regulations and law. The ALJ did not specifically evaluate or comment on the Claimant's character. Instead, the ALJ assessed whether the Claimant's actions and activities were consistent with her subjective complaints. R. 21-22. Such an assessment is essential to the adjudication of any disability claim.

First, the ALJ considered that the record revealed improvement of symptoms with treatment. For example, although the Claimant's 2015 hip surgery was unsuccessful, the ALJ observed that the Claimant demonstrated marked recovery within one year from the February 2016 total left hip replacement: (1) in April 2016, Dr. Jeremy Hogan noted that the Claimant's incision was well-healed, that she was walking with no limp or antalgic gait, and that she tolerated gentle range of motion, R. 557-58; (2) April and May 2017 physical examination results from Dr. Reitz were consistently normal, showed normal station and ambulatory pattern upon gait testing, and demonstrated no gross deficits in function in any region of the body, R. 633, 638; and (3) in August 2017, the Claimant reported that her bilateral leg weakness was improved with medication, and Dr. Heather Horton noted that the Claimant's physical and neurological examination was normal and that she had a "normal, steady" gait, R. 687-89. R. 22.

The ALJ noted that, when treatment was recommended, it was conservative. R. 24. The ALJ considered the record evidence of improvement of the Claimant's symptoms with recommended treatment. *See* 20 C.F.R. § 404.1529(c)(3)(v) (directing

the ALJ to consider the effectiveness of treatment in assessing subjective complaints). For example, as the ALJ discussed: (1) although Dr. Henning recommended shoulder injections in April 2016, he determined later that month to "hold[] off on any injections for her shoulders as she seems to be improving with therapy and time," R. 559, 23; (2) although records confirmed an essentially normal diabetic foot examination in April 2017, Dr. John Ribadeneyra strongly encouraged the Claimant to restart an insulin regiment, and the next month he noted that the Claimant's blood sugars were "getting better," and assessed the Claimant's diabetes as "improved," R. 23, 664-65, 673; and (3) in April and May 2017, Dr. Reitz documented improvement—from prescription medication—for the Claimant's reported cataplexy falls. R. 23, 680, 685, 688-89.

The ALJ considered both "the absence of treatment pursued by [the Claimant], and the almost complete absence of treatment for the back, neck and shoulders since the summer of 2016." R. 24. Specifically, the ALJ noted that, "after the hip surgery in May 2015, the record fails to document any further significant workup for the neck or shoulders until November 2015, and no record evidence of treatment for the back until summer of 2016." R. 22. Additionally, as the ALJ discussed, although Dr. Salerni recommended the Claimant pursue epidural steroid injections to the lumbar and cervical spine (R. 561), there is no record evidence of the Claimant undergoing any such injections, and no evidence that the Claimant had further visits to Dr. Salerni or any other orthopedic specialist after June 2016. R. 23.

16

Despite the Claimant's complaints of being limited by her physical conditions, the ALJ considered that she reported being able to engage in a range of daily activities. R. 24-25. The ALJ noted that Dr. Trina Jackson, a consultative examiner, observed the Claimant's reports that she could independently handle personal care and hygiene. R. 24, 609. The ALJ further noted that, contrary to the Claimant's testimony that she must lie down for six and a half hours daily, R. 47, 82, the Claimant reported and testified that she could drive, make the bed, wash dishes, manage money, assist her husband with meal preparation, and occasionally shop by herself, R. 25, 45-46, 200-01. R. 25. With respect to the Claimant's all-over joint pain and significantly decreased power in the upper and lower extremities, the ALJ noted that these symptoms were reported during only one examination conducted by APRN Olden and in connection with her application for disability benefits. R. 25.

In sum, the ALJ gave sufficiently detailed reasons, grounded in the record evidence, for her treatment of the Claimant's subjective statements. 20 C.F.R. § 404.1529(c)(3) (noting that, in addition to objective medical evidence, relevant factors to consider when evaluating subjective statements include consideration of daily activities, treatment, and other factors). Since this determination is supported by specific findings in the record, the ALJ's findings are entitled to deference. *Frustaglia v. Sec'y of Health & Human Serv.*, 829 F.2d 192, 195 (1st Cir. 1987).

## CONCLUSION

For the reasons stated above, I **AFFIRM** the decision of the Commissioner denying the Claimant's request for disability benefits and I **ORDER** that the Claimant's complaint be **DISMISSED**.

SO ORDERED.

/s/ Nancy Torresen  
United States District Judge

Dated this 23rd day of October, 2019.

## MEDICAL SOURCE STATEMENT OF ABILITY TO DO WORK-RELATED ACTIVITIES (PHYSICAL)

### MANIPULATIVE LIMITATIONS
Are the following MANIPULATIVE functions affected by the impairment:

|  | LIMITED | UNLIMITED |
|---|---|---|
| 1. Reaching all directions (including overhead) | ☒ | ☐ |
| 2. Handling (gross manipulation) | ☒ | ☐ |
| 3. Fingering (fine manipulation) | ☒ | ☐ |
| 4. Feeling (skin receptors) | ☒ | ☐ |

If there are manipulative limitations described as "limited", please check how often the individual can do the following.

| | | | |
|---|---|---|---|
| ☐ REACHING | ☐ OCCASIONALLY | ☐ FREQUENTLY | ☒ LESS THAN 2 ½ HOURS A DAY |
| ☐ HANDLING | ☐ OCCASIONALLY | ☐ FREQUENTLY | ☒ LESS THAN 2 ½ HOURS A DAY |
| ☐ FINGERING | ☐ OCCASIONALLY | ☐ FREQUENTLY | ☒ LESS THAN 2 ½ HOURS A DAY |
| ☐ FEELING | ☐ OCCASIONALLY | ☐ FREQUENTLY | ☒ LESS THAN 2 ½ HOURS A DAY |

5. Describe how the activities checked "limited" are impaired and the basis of additional manipulative limitations. What medical/clinical findings support your conclusions?

Cannot lift arms above 90° due to pain + weakness

### VISUAL/COMMUNICATIVE LIMITATIONS
Are the following functions affected by the impairment?

|  | LIMITED | UNLIMITED |
|---|---|---|
| 1. Seeing | ☐ | ☒ |
| 2. Hearing | ☐ | ☒ |
| 3. Speaking | ☐ | ☒ |

4. Describe how the faculties checked "limited" are impaired.

### ATTENTION/CONCENTRATION

Is it medically reasonable to expect that this patient's ability to maintain attention and concentration on work tasks throughout an 8 hour day is significantly impaired pain, prescribed medication or other factors such that the patient is likely to be off task even 15 to 20% of an 8 hour work day?